The next case will be 061166 and 11167 Intex Recreation v. Metalast The first thing I'd like to talk about today is where the district court erred in reaching its erroneous claim construction of the term uninterrupted to mean smooth or uniform inter-services. The district court employed an improper methodology in its claim construction. What the district court did is it first determined what it understood to be the point of error. Why do we care what methodology is followed since we review it de novo? Because I think it's important to understand where the district court went wrong and why the district court didn't afford the prosecution history the proper way that it should have been afforded. What the district court did is it found what the ordinary meaning of the term was in its opinion based on evidence, based on, well not, without consulting either the specification or the prosecution history. It only consulted the specific, it only, it did never consult with the specification, but it only consulted the prosecution history after it determined the ordinary meaning. And it only consulted the specification history in order to see whether it clearly and unequivocally overcame what it understood the ordinary meaning to be. Now if there's one thing in this case that cannot be disputed, and that's that the term uninterrupted was added to the claims of the patent suit in order to overcome the full patent, therefore the prosecution history is important in this case in understanding what the term uninterrupted meant. Why couldn't smooth also take account of the situation in which there are two pieces that are joined together so that there's a seam there? Why isn't something that has a seam in it lacking in the characteristic of smoothness? Well, Your Honor, because if the term is construed to mean smooth, there can be a one piece or two piece that is not smooth. So that the term uninterrupted... I don't understand your answer. Well, let me understand your question, Your Honor. You're asking if... We have in the full patent, as you read it, it's the circular thing meant by the resulting from the joining of the two pieces of the rung. And when those are put together, presumably there's a seam there where the two parts join to each other. So why isn't that seam lacking in smoothness? I mean, you could say it's two pieces, yes, that's correct, but it's also true that the interior of the sleeve is not smooth, right? That's correct, Your Honor, but then an inner surface that's not smooth, okay, an inner And that would not accomplish the objectives of the patent, which was to reduce the number of parts and to eliminate the need for nuts and bolts. The patent applicant's attorney in his arguments in support of the amendment said that the inner surfaces of the rung sleeves of full, which are formed by mating two semicircular inner surfaces and holding them together using nuts and bolts, does not constitute the sleeve of the present invention, which has uninterrupted inner surfaces. And he went on to state that by forming them to be... So is your argument that the distinguishing of the full patent could have been based on either a lack of smoothness because of the seam where they were joined or because it was two pieces rather than one piece? And we just can't tell from the prosecution history which was meant by uninterrupted. Well, if Your Honors are construing smooth to mean one piece without a seam, then I can agree with that so long as those two pieces need to be held together with nuts and bolts. That was the object of this invention, to eliminate the need for nuts and bolts. If there's a seam... But the nuts and bolts don't have anything to do with uninterrupted, right? No, they have everything to do with uninterrupted. Well, what do they have to do with uninterrupted? Uninterrupted, the way that it is used in this patent, means that the sleeve is unitary or one piece. There is no need to hold the sleeve together as was necessary in the fall. There is no need to hold that sleeve together using nuts and bolts. The rung of the full patent was formed in two pieces, each piece having a semicircular inner surface. So that when you brought the two parts of the rung together, the two surfaces met and you needed to secure them using nuts and bolts around the uprights. How does uninterrupted have anything to do with nuts and bolts? It may have to do with whether it's two pieces or one piece. It may have to do with whether the interior of the sleeve is smooth, but what does it have to do with whether there are nuts and bolts used in it? Well, because whether it's two pieces or one piece dictates whether you need nuts and bolts. But not necessarily. Suppose that instead of using nuts and bolts, what you did was to epoxy the two pieces together, so that what you ended up with was, starting with two hemispherical portions, you ended up with one. Would that be uninterrupted in your view? Well, Your Honor, when we talk about using nuts and bolts, we're talking about securing these. I understand, but you could use a different securing means to bring the two portions together. Suppose you did use epoxy. Well then, if you used epoxy in order to attach the two inner surfaces together, that would not be covered by our batten. That would not be an uninterrupted inner surface. The reason That's just a single surface that looks very much like your figure. The sleeve simply looks like. It would not be uninterrupted because it had originated in two parts as opposed to one? That's correct, Your Honor, and that's what we had in full. In full, when the ladder was fully constructed together, it looked very, very much like our ladder, and that's why there was a one or two beam rejection. It looked exactly like our ladder. It was only when you looked at how it was assembled that you saw the difference. I'm wondering whether you're making an argument that sounds to me like it doesn't necessarily help you. You're suggesting now that the definition of the term uninterrupted has to do with the method of construction as opposed to the status of the, in this case, the rung and all of its features when it's fully constructed. No, Your Honor, respectfully, that's not the argument that I'm making. Well, I thought in response to my question about the epoxy, you were saying, well, once the epoxy set, you wouldn't have one piece. You would still have two pieces. Why would you still have two pieces? Because that's what you started with. Well, the object of this invention was to provide a ladder that's easy to assemble. If you read from the abstract of the invention, it says, the arrangement of the ladder is simple to assemble, having few parts which fit together without requiring additional bolting or securing, such as with an epoxy. So the object of the invention was to provide fewer parts that you didn't need to use epoxy. You didn't need to use nuts and bolts. All you needed to do was slide the rung over the upright down to the split sleeve. If you require, like in full, if you require that the rung halves be brought together and secured using nuts or bolts or some other securing means, that does not practice the invention and is not covered by the claim. That's the reason why uninterrupted was added. If you read the remarks section of the amendment, which are at 8261, the patent attorney goes through and explains how the full ladder is assembled. And then it talks about, it says applicants submit that the assembly of the full ladder would be far from simple when compared to the simple construction and arrangement achieved by the present invention, which has few parts and which parts merely fit together in a manner sufficient to secure the ladder in an assembled condition without the need for additional bolting. I don't see why, and one skilled in the art wouldn't understand why the applicant's attorney would make those arguments if all that was meant by uninterrupted was that it's smooth. Those arguments would be superfluous and they would make no sense. How would we know that one skilled in the art wouldn't understand it that way? Well, we offer testimony from an expert in this case. That's in the record that he understood it that way. Was there any other? Were there any other experts that testified? Intex offered an expert in this case, but that expert never consulted the prosecution history. Intex stated at the market hearing that they intentionally didn't show him the prosecution history because they just wanted his opinion as to what the ordinary meaning meant in the abstract. And that's all his testimony was offered for. Well, but to be fair to the district court, the district court did look at both experts and concluded that their expert was more helpful and persuasive and had more pertinent expertise than yours and rejected yours based on the expertise not being particularly pertinent and accepted with qualifications and fairly said, didn't completely accept the representations made by your opposing parties of counsel, but nonetheless, or expert, but nonetheless found that to be helpful and persuasive. So to the extent that this is a battle of experts, that was a battle that at least the district court resolved against you as I read the record. Yes, and I have two responses to that. Number one, I think that's one of the many errors that the district court made. And number two, I don't believe that this is a case that requires any extrinsic evidence. I think when you read the entire intrinsic evidence, this claims the specification and the prosecution history, there's no doubt that this term means unitary or one piece. Well, what are the things that lead to that conclusion? Is the prosecution history neutral on this point or do you think it supports you? The prosecution history? Yeah. I think there's no doubt that the prosecution history supports our position. So what else do you have going for you except the prosecution history? The specification. What part? The abstract, which I just read, that talks about simple to assemble and having few parts which fit together without requiring bolting. The sleeve that's formed in the raw, that's at issue here, is referred to throughout the specification as a tubular sleeve, tubular sleeve nine. And in the first column of the patent, at column one lines 14 through 19, it says, in this ladder, the conventional assembly of rungs to the uprights using screws and nuts has been dispensed with. And at the same time, the holes to be made in the uprights are eliminated. So they are not weakened. There is nothing, on the flip side, there's nothing in the specification that mentions smooth or that would lead one skilled in the art to be smooth. And it's important to note, Your Honor, that the district court, in its marking decision, did not cite to a single sentence of the written description of the specification, not a single sentence, nor did it text in its briefs. Do you want to say your rebuttal time? Yes, Your Honor. Mr. Raskin. Thank you, Your Honor. If I may, I'm directing my first comments to what Mr. Raskin was just addressing. In looking at the 041 patent, specifically looking at the specification as well as the patent language, which is what the district court did, there are several references which the court itself referred to as supporting its interpretation that uninterrupted inner services, as in text maintained, applied to the inner services and meant smooth, that is, without gaps, protrusions, or recesses. There has been a reference by Mr. Raskin to the tubular, there's a reference to tubular in the specification. At column 1, A103, line 23, it's a tubular aperture, as it's described. But specifically, in the claim 1, there is no reference to tubular. Instead, the patent counsel specifically used a sleeve having uninterrupted inner surfaces that's different from tubular. And I believe one of the reasons is, if you look down below on column 1, there is a reference to the tubular uprights. But those tubular uprights have recesses. And so there's a differentiation here where the tubular itself may describe a shape. It is not, they specifically did not use that in reference to the inner surfaces that are an issue here. I would agree also with the court that if you have two pieces and you join them together in any manner, you don't have an uninterrupted surface because you'll have a seam of some nature. Our position, the district court also, in its opinion, in both opinions, because it did address this twice. And it wouldn't be smooth either, right? I beg your pardon? It wouldn't, if you had the seam, it wouldn't be smooth. Well, it is as defined, not as we define it, because it would be, although perhaps microscopic, it would be a gap, it would be a recess, whatever. It would not be, that would not be smooth. Well, let me ask you this about full. As I read full, and it's a very old patent, and it's a little hard to see exactly what the technology is here, if that's the right word. But it does look as if, just looking at the figures in full, the two semicircles do not meet. And in fact, that does appear to be consistent with the way it's described as functioning, since presumably, if they met before the maximum pressure had been exerted on the rope, then there would be a tendency of the rung to slide. What you want, presumably, is for the bolting to push the two together so that they really dig into the rope, and that is going to happen better if you have some slight amount of gap still left, in effect some play left in the structure. So isn't it fair to say, drawing on full, that uninterrupted means something other than full, i.e. something in which there is actually a gap between the two? Interrupted would be a gap. And uninterrupted would mean no gap. But no more than that. And your accused device has no gap. Our accused device has a recess. A gap in the void, let's say, the interruption to only a gap, as opposed to, if it's a protrusion, that's not a gap. If that's true, then you obviously win the case. But that's the question we have to decide. I understand. But there's the full pattern, there's two semicirculars that come together, but that just... Well, my question really is, do they? I mean, do they come together? It looks to me, from looking at full at least, the extent to which the figures in the very short text give us any guidance, doesn't look like they actually join together. Well, my reading of the full is a little bit different, Your Honor. I look at there are two semicircular recesses. They place the clamps inside those semicircular recesses. The rope or cable is placed next to the clamp, and then they bolt them together, pushing them together, and I understand those semicircular recesses would then meet. There would not be a gap. I'm really confused. I'm sorry, Your Honor. There's a question as to what inner surfaces we're talking about in the full pattern, and it seems as though you've said that the inner surfaces are the inner surfaces of the clamps, which I thought was the assumption that you were just discussing with Judge Bryson, whereas your opponent says the interior surfaces are the sleeves created by the two pieces of the rung. I understand. So, am I correct that in answering Judge Bryson's questions, you were assuming that the reference to the full pattern was talking about the interior surfaces of the clamps as opposed to the interior surfaces of the rungs when they're joined together? And the reason that would be, Your Honor— No, no, but just to be clear, the answer is yes, first? Yes, if I may— Oh, well, that wasn't my understanding. I'm glad we're clarifying this. Let me explain what I mean. The medalist has taken a position in trying to equate the full pattern with the 041 pattern, which is an issue that the inner surfaces that should be considered are those of the semicircular recesses. The sleeves. Well, the semicircular—they call those recesses their sleeves, but that's the full pattern we're talking about. Oh, you're talking about the full pattern. But if you look at the response to the office action that Patent Counsel for Medalists filed in distinguishing the full pattern from the 041 application, he goes through, and it's already been said, it's at page— A261. 261. The rungs in the full pattern are in the form of two plates, one, which are secured to the semicircular recesses, two, in which clamps are set. Yeah, but your problem is that it says in the present invention the rungs have apertures defined by sleeves. It seems to be talking about the sleeve created by the joining of the rungs rather than the sleeve created by the existence of the clamps. But my point in terms of trying to define what was being distinguished between what the application was and what the full pattern was, the Patent Counsel specifically included in which clamps eight are set as part of his distinguishing portion. Yeah, but you're not addressing the language that seems to me to pretty clearly refer to the interior surfaces of the rung, of the hole created in the rungs, rather than the interior surface of the clamps. I understand that. My point was it appeared to us that Patent Counsel was assuming in his argument at least that you would include, since the clamps are set inside, that that was what they were talking about, was including the recesses with the clamps as well in order to make his argument distinguishing what full called for and what the new 041 application called for. That was our point. But it would seem to me that whether one's talking about the interior of the circular opening in the rungs or whether one's talking about the interior surface of the clamps, that in either event there are seams there. There would be. Yes, there are. It would be the same. If I answered your question, Your Honor. Going back, the district court also, again, cited two other portions of the specification which supported its view that uninterrupted interior surfaces, and I would stop here and reiterate that. Under the proposed construction of Metal S, that would be as if you were taking uninterrupted and applying it to sleeve, modifying the sleeve instead of the inner surface. And that, as we set out in our brief, seems to be antithetical to good grammar where you have a modifying word addressing the inner surfaces. So that was specifically put in there to modify the inner surface, not to describe the sleeve itself. And when you look at the sleeve that has been described in the patent compared to, let's say, the split sleeve which is a single piece, but it does not meet. It also has a protrusion inside. That's one way of differentiating it. There's also the references to very limited portions of the Again, I think it has to be remembered, as we again set forth in our brief, that the language which we were discussing was the creation of a patent counsel after an office action trying to translate a Spanish application that had been rejected because it was merely a literal translation. And the language that was employed was based upon what he discerned from what he had received as opposed to the language that necessarily may have come from the applicant. There's one other thing which in terms of the distinction with full that has been mentioned before in the position of metal aesthetic. Full is only distinguished on the basis of the inner surfaces or the clamps and the recesses. Immediately preceding that, the patent counsel, Mr. Holman, points out that the uprights that are in the 041 patent are rigid uprights, whereas in full they are talking about a rope or a cable. In the original application that was filed, it merely says uprights. And when he amended the language, he inserted rigid. And I believe that's also another reason that you could see prosecution history, which we feel supports our view, at least ambiguous as the district court found, because you don't know what happened. You don't know. The examiner didn't tell you why he cited the full patent. Patent counsel complained as much when he filed his response because he didn't know what exactly the basis of the citation of full was and lodged these two points and then goes on to recount how there are fewer parts and that sort of thing. In terms of what the district court did in interpreting the ordinary meaning of the term uninterrupted, as it states in its opinion, this is not a technical term. It is not a The district court took what the ordinary meaning was, took it in the context of the language itself in terms of how it was placed next to inner surface. The fact, as it states later on in claim one, it slid over the two slides through. That would be another support to a smooth or uninterrupted inner surface so that he could easily slide a split sleeve up and through into the rung, all of which he could make his determination as to the meaning of that term without extrinsic evidence. At best, for us, we believe that the prosecution history supports our view that uninterrupted would mean smooth, without gaps, protrusions or recesses. But as the district court said, you have no real guidance there. And it may be one, as this court has found in the past, where the prosecution history is sufficiently ambiguous that it really adds little help in the construction process. If there are any further questions of the court that I could address? Let me return, at the risk of eating a dead horse here, on Full. Do you have your appendix there, the original appendix? 466.31. Now, I take it that those drawings, which are taken from Full that made it a little easier to see, are the completed, assembled latter, correct? On the left of Full. Well, Your Honor, looking at figure 2, I think, I would believe that is actually as you're joining them together. I don't read Full as leaving a gap between once the... So you think that all three, or at least numbers 1 and 2, are in the process of assembly, as opposed to the finished? Correct. And is there anything in Full to support the notion that that's just an in-process depiction? Well, I just, I would refer to the language, if I could find it, Your Honor, where it talks about the process of joining them together... Well, there certainly is, that is certainly the process. The question is, do those figs represent the finished product, or do they represent something along the way as you're beginning to tighten the bolts? Well, there's nothing... If the... I submitted it, and I find nothing in Full to support that. If we're talking about where they were manufactured such that there would be a gap when they would be manufactured such that even if they were pushed together, there would be a gap, there's nothing in there that shows All right. Thank you. Thank you, Your Honor. Thank you. Mr. Gosselin? All right, Judge Bresson, I'd just like to address that question that you just posed to the plaintiff's counsel. I believe that figure 2 in... on 846631 does show... represent the finished product, and I think the support for that in Full is figure 1, where you can see a gap between the rung pegs at the front of the step. You can see there that there was a gap, and that when you bring them together, it does not fully come together like a unitary or one piece in their surface. So that is, in our opinion, what the applicant meant in its arguments, and how one skilled New Yorker would understand the term uninterrupted. They would understand it to be distinguishing from that very feature of Full. I'd just like to address... So what your contention would be that uninterrupted means there has to be a gap so that your patent would cover a two piece thing where there wasn't a gap? No, that's not my position. Interrupted would mean two pieces. Yes. And anything that doesn't have two or more pieces is not... Uninterrupted. No. I'm sorry. Yes. Too many nots. That it is uninterrupted as long as it doesn't have multiple pieces. That's correct. That's your assertion. That's correct. If you look at the accused device here... So the gap in the page that we were just looking at has nothing particular to do with the construction. Even if you had the two pieces joined together, that would still be an interrupted surface. Correct. So long as you started with two separate surfaces to begin with, because that would and that would solve the problems that the invention was trying to solve. I'd like to address a couple of things that Mr. Cadet just said. First, their argument that we are applying uninterrupted to the sleeve and not to the inner surface. That's just not true. We are arguing that the inner surface is uninterrupted and not the sleeve. The finding of the emphasis of the district court on uninterrupted modifying on inner surfaces and not the sleeve was off base. The plaintiff's counsel as well as the district court also relied heavily on the drawings. Saying that the drawings show a smooth inner surface, but the drawings also show a unitary or one piece inner surface. The argument that patent counsel... You're talking about the difference between one piece construction and multiple piece construction? Just to say that instead of using the word uninterrupted? I've been asking myself that question throughout this entire case. Why? But that's what we're left with. That's what this patent attorney chose to do. And that's what we have to examine from the standpoint of one skilled in the art. And I think it's clear from the intrinsic evidence that that's what the attorney meant and how one skilled in the art will understand it. Thank you.